IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CR-00206-F-6

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| SAMANTHA LEIGH ROSS-VARNER, | ) |
| Defendant. | ) |

This matter is before the court on the following pretrial motions filed by defendant

Samantha Leigh Ross-Varner ("Ross-Varner"): (1) Motion to Dismiss Count One for Absence

of Supporting Evidence [DE-142]; (2) Motion to Suppress First December 12, 2013 Statement

[DE-144]; (3) Motion to Suppress Second December 12, 2013 Statement [DE-146]; (4) Motion

to Suppress January 8, 2014 Statement [DE-148]; (5) Motion to Dismiss Count One for Failure

to Plead an Offense [DE-150]; (6) Motion to Exclude Statements by Troy Dye [DE-151]; (7)

Motion for Copy of Recording [DE-152]; (8) Motion for Impeachment Records [DE-153]; (9)

Motion to Stipulate to Felony Conviction [DE-154]; (10) Motion for Pretrial Notice of 404(b)

Evidence [DE-155]; (11) Motion for Copy of Michael Custer's PSR [DE-156]; (12) Motion for

Coconspirator Statements and Jencks Material [DE-157]; (13) Motion to Sever Trial from

Codefendants [DE-158]; (14) Motion to Dismiss Gun Charges on 2nd Amendment Grounds

[DE-159]; and (15) Motion for Discovery [DE-160]. The issues have been fully briefed and are

now ripe for ruling.

## I. Factual and Procedural Background[1]

On December 8, 2013, Troy Keith Dye contacted the Wayne County Sheriff's Office and reported that his Glock 26, 9mm semiautomatic pistol had been removed from his room. Dye reported that Ross-Varner was renting a room from him, and he recently showed her the gun. Dye strongly believed that Ross-Varner had taken the gun. Dye called back later and gave the serial number for the missing gun. The information was entered into the National Crime Information Center (NCIC).

On December 12, 2013, Deputy Walston and Corporal Sasser with the Wayne County Sheriff's Office were called to 102 Remington Court in Goldsboro, North Carolina, in response to a disturbance call. Dispatch reported that there was a female at the residence with a firearm. When deputies arrived at 102 Remington Court, they made contact with resident Troy Dye. Dye stated that he had confronted Ross-Varner about moving out, and they began to argue. Dye reported that Ross-Varner had walked away from the residence onto Weatherby Drive and was last seen carrying two bags. The deputies walked around Dye's house to the next street over in an area where Dye had last seen Ross-Varner walking. The deputies discovered a pink tote bag and a grey backpack near the edge of the wood line around a small wooded stream that ran on both sides of Weatherby Drive.

The deputies seized the bags and placed them on the back of Sergeant Peedin's vehicle. The deputies searched the bags. They recovered a black Glock semi-automatic pistol in the grey backpack, the same gun that had been reported stolen by Dye. The deputies also recovered

---

[1]The court's factual recitation comes from the parties' representations contained in Ross-Varner's motions, the Government's Response, and the parties' attached exhibits.

women's exotic dancing clothes. It was known that Ross-Varner was an exotic dancer at the time. In the pink bag, the deputies found four blister packs of pseudoephedrine, more traditional women's clothes, and photographs. With the exception of the firearm, all of the items were secured in the back seat of Deputy Walston's vehicle.

Shortly thereafter, the deputies received a suspicious person call to 103 Carlyle Court, which is located close to Dye's address. The deputies were advised that there was a female on the porch at the Carlyle Court residence. The description of clothing worn by the female matched the description Dye gave of Ross-Varner's clothing earlier that evening. The deputies proceeded to 103 Carlyle Court and made contact with the woman on the porch. The woman identified herself as Samantha Ross-Varner. Ross-Varner informed the deputies that her boyfriend had put her out of the car on Buck Swamp Road earlier that evening after an argument. Ross-Varner stated she was trying to get back to the Rosewood community in Wayne County.

The deputies walked with Ross-Varner back to Deputy Walston's vehicle and showed her the bags they had found. Corporal Sasser asked Ross-Varner if the bags belonged to her. Ross-Varner responded affirmatively and stated that the grey bag belonged to her boyfriend.

It was determined that there was enough evidence to charge Ross-Varner with possession of a stolen firearm. Ross-Varner was transported to the Wayne County Sheriff's Office Annex, where she was Mirandized and interviewed.

While Ross-Varner was in the Wayne County Detention Center on the gun charge, she requested an interview with law enforcement via Deputy Walston. On January 6, 2014, Ross-Varner was interviewed by Special Agent Lauren Powell and Wayne County Sheriff's Office Detective Charles Shaeffer. Ross-Varner made admissions about her involvement in buying

3

methamphetamine and with methamphetamine cooks in the Wayne and Johnston County areas of the Eastern District of North Carolina. Special Agent Powell asked Ross-Varner if she would be willing to be interviewed by Special Agent Page, who had more knowledge about defendants in that area of the state. Ross-Varner agreed.

On January 8, 2014, after waiving her *Miranda* rights, Ross-Varner was interviewed by Special Agent Page, Special Agent Powell and Johnson County Sheriff's Office narcotics detective Jay Creech. During the interview, Ross-Varner implicated herself in the methamphetamine conspiracy she is charged with by discussing her involvement with co-conspirators with the sale and production of approximately four hundred (400) grams of methamphetamine during the time frame of the conspiracy.

Ross-Varner and six other individuals were named in a thirteen-count indictment on September 16, 2014. *See* Indictment [DE-1]. Ross-Varner is charged in five counts of the indictment. In Count One, Ross-Varner is charged with conspiracy to manufacture, distribute, dispense and possess with intent to distribute fifty (50) grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846. Count Ten charges Ross-Varner with possession of pseudoephedrine with the intent to manufacture a controlled substance being methamphetamine and aiding and abetting, in violation of 21 U.S.C. § 841(c)(1) and 18 U.S.C. § 2. In Count Eleven, Ross-Varner is charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924. Count Twelve charges Ross-Varner with possession of a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924. In Count Thirteen, Ross-Varner is charged with possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 942(c).

4

Ross-Varner filed the instant fifteen pretrial motions on February 27, 2015. On March 20, 2015, the Government filed its Response [DE-172] to all of the motions.

Ross-Varner and three of her codefendants are scheduled for arraignment and trial at the court's May 11, 2015 term of court. Codefendants Michael Eugene Custer, William Joseph Hill, and Terry Matthew Hall have pled guilty and are awaiting sentencing.

## II. Discussion

### A. Motion to Dismiss Count One for Absence of Supporting Evidence

In her Motion to Dismiss Count One for Absence of Supporting Evidence, Ross-Varner argues that Count One should be dismissed because it was "wholly unsupported by the evidence presented to the grand jury in September 2014." [DE-142] at 1. Specifically, Ross-Varner argues that in September 2014, the grand jury had no rational basis for finding probable cause that she conspired to distribute more than 50 grams of a substance containing methamphetamine. [DE-143] at 3. In the alternative, Ross-Varner requests that this court order production of the grand jury transcripts showing the basis of her being indicted in Count One. [DE-142] at 1. Ross-Varner asserts that the grand jury transcripts are needed to avoid the possible injustice of her being tried and convicted of a criminal charge for which the grand jury had no evidence to indict. [DE-143] at 3.

In *Costello v. United States*, the Supreme Court held that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for a trial of the charge on the merits. The Fifth Amendment requires nothing more." 350 U.S. 359, 363 (1956). Moreover, the Supreme Court has held that "'[i]t would run counter to the whole history of the grand jury institution' to permit an indictment to be challenged 'on the ground that there

5

was inadequate or incompetent evidence before the grand jury.'" *United States v. Williams*, 504 U.S. 36, 54 (1992) (quoting *Costello*, 350 U.S. at 363-64). Motions to dismiss an indictment based on a claim that the jury had insufficient evidence have been routinely rejected by the Fourth Circuit Court of Appeals. *See United States v. Mills,* 995 F.2d 480, 487 (4th Cir. 1993) (the court noted that "the Supreme Court's holdings under the Fifth Amendment's Indictment Clause teach that courts lack authority to review either the competency or sufficiency of evidence which forms the basis of an indictment"); *United States v. Alexander*, 789 F.2d 1046, 1048 (4th Cir. 1986) (holding based on the majority in *Costello* that "a facially valid indictment suffices to permit the trial of the party indicted").

The Government has agreed to turn over the transcript of the grand jury proceeding on the Thursday prior to trial. [DE-172] at 10. Moreover, Ross-Varner's argument that the evidence before the grand jury provided no rational basis for finding probable cause that she conspired to distribute 50 grams or more of a substance containing methamphetamine is based on sheer speculation regarding what evidence was before the grand jury. The court finds that the indictment in this case was returned by a legally constituted and unbiased grand jury and is valid on its face. For these reasons, Ross-Varner's Motion to Dismiss Count One for Absence of Supporting Evidence [DE-142] is DENIED.

## B. Motion to Suppress First December 12, 2013 Statement

Ross-Varner argues in her Motion to Suppress First December 12, 2013 Statement that her statement to law enforcement must be suppressed because it was obtained as a result of a *Miranda* violation. [DE-144] at 1. Specifically, Ross-Varner contends that she was in law enforcement custody and was subject to interrogation without being advised of her *Miranda*

6

rights when she allegedly made the statement claiming ownership of the bags in the law enforcement patrol vehicle that contained contraband. *Id.*

The Fifth Amendment, in pertinent part, provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This Fifth Amendment protection applies to custodial interrogations, as well as to courtroom proceedings. *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966). Under *Miranda*, statements made during a custodial interrogation are admissible only if a defendant receives the following warnings: he has the right to remain silent; anything he says can and will be used against him; he has the right to an attorney; and, if he cannot afford an attorney, one will be provided for him. *Id.* at 444.

The test for determining whether an individual is "in custody" for *Miranda* purposes is whether, under the totality of the circumstances, the "suspect's freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty,* 468 U.S. 420, 440 (1984) (internal quotation marks omitted). The issue is whether, when viewed objectively, "a reasonable man in the suspect's position would have understood his position" as being "in custody." *Id.* at 442. Some of the facts that are relevant to this determination include "'the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant.'" *United States v. Day,* 591 F.3d 679, 696 (4th Cir. 2010) (quoting *United States v. Weaver*, 282 F.3d 302, 3012 (4th Cir. 2002)).

In this case, the deputies responded to the call regarding a suspicious woman who

7

matched the description and name of the suspect in a crime. Corporal Sasser and Deputy Walston walked Ross-Varner back to Deputy Walston's vehicle. Corporal Sasser showed Ross-Varner the bags in the back seat of the patrol vehicle and asked her if they belonged to her. There was nothing that prevented Ross-Varner from walking away or refusing to answer Corporal Sasser's one question. Ross-Varner was never placed in handcuffs. There is no claim that Ross-Varner was physically restrained or told that she was not free to move around outside. Under the circumstances, the court finds that Ross-Varner was not in custody when she made the statement claiming ownership of the bags in Deputy Walston's vehicle. Because she was not in custody, *Miranda* warnings were not necessary. Accordingly, Ross-Varner's Motion to Suppress First December 12, 2013 Statement [DE-144] is DENIED.

## C. Motion to Suppress Second December 12, 2013 Statement

In Ross-Varner's Motion to Suppress Second December 12, 2013 Statement, she argues that her statement must be suppressed because it was the product of an unconstitutional seizure under the Fourth Amendment.[2] [DE-146] at 1. Ross-Varner contends that her case "fits precisely" with *Brown v. Illinois*, 422 U.S. 590 (1975) and *Dunaway v. New York*, 442 U.S. 200 (1979). [DE-147] at 6. Specifically, Ross-Varner argues that she was "seized" within the meaning of the Fourth Amendment when she was taken to the patrol car, transported to a law enforcement facility, and placed in an interrogation room. *Id.* Ross-Varner contends that the seizure was not supported by probable cause, and the connection between the unconstitutional seizure and the incriminating statement is "tight and unbroken." *Id.*

_____

[2]Ross-Varner explains that her "second statement" refers to the statement she allegedly made when questioned by law enforcement at the Wayne County Sheriff's Office annex. [DE-146] at 1.

8

Here, Ross-Varner voluntarily acknowledged that the bags in the possession of the deputies belonged to her and her boyfriend. One of the bags contained a stolen firearm. That same bag had been identified by the victim of the theft as one Ross-Varner was carrying when she was last seen earlier that day. The bag was discovered by the deputies near the area Ross-Varner had gone after leaving the victim's residence.

After Ross-Varner acknowledged that the bag containing the stolen firearm had been in her possession, Corporal Sasser called his supervisor, Sergeant Peedin. Sasser and Peedin discussed the evidence in the case and Peedin advised Sasser that he believed there was sufficient evidence to charge Ross-Varner with possession of a stolen firearm.

Ross-Varner, who was under arrest, was then transported to the Wayne County Sheriff's Office Annex for interview. Ross-Varner waived her *Miranda* rights, and the interview was conducted. Ross-Varner was then processed at the Wayne County Detention Center.

The facts of this case are clearly distinguishable from those presented by *Brown* and *Dunaway*. In *Brown*, two detectives broke into Brown's apartment, searched it, and then arrested Brown, all without probable cause and without any warrant. 422 U.S. at 592. The two detectives took Brown down to the police station. *Id.* at 593. At the police station, the detectives warned Brown of his rights under *Miranda*. *Id.* at 594. Brown answered questions posed to him about the murder the detectives were investigating and signed a two-page statement. *Id.* at 594-95. Brown then met with the State's Attorney, who again provided him with *Miranda* warnings. *Id.* at 595. Brown gave a second statement, in which he provided a factual account of the murder that was substantially in accord with his first statement. *Id.* The Court held that *Miranda* warnings, alone, cannot always make the act sufficiently a product of free will for Fourth

9

Amendment purposes. 422 U.S. at 603.

In *Dunaway*, a detective received information from an informant about Dunaway's involvement in a murder, but the information was insufficient to get a warrant for Dunaway's arrest. 442 U.S. at 203. Nevertheless, the detective had Dunaway picked up and brought in. *Id.* Dunaway was questioned by officers after being given *Miranda* warnings. *Id.* Dunaway waived his right to counsel and eventually made statements and drew sketches that implicated him in the crime. *Id.* The Court held that detention for custodial interrogation, regardless of the label given, intrudes so severely on Fourth Amendment interests that it necessarily triggers the traditional safeguards against illegal arrest. *Id.* at 216. The Court ultimately concluded that the police violated the Fourth and Fourteenth Amendments when they seized Dunaway and transported him to the police station for interrogation without probable cause. *Id.*

In this case, Ross-Varner's arrest was supported by probable cause and was not merely investigatory in nature. Specifically, the deputies had probable cause based on the information they received from the victim of the theft, in addition to their recovery of the bags matching the description of the bags Ross-Varner was last seen carrying when she left the victim's residence. Also, after their search of the bags, the deputies had the knowledge that one of the bags contained the firearm that had been reported as stolen. The deputies also had Ross-Varner's admission that the bags had been in her possession. It was only after the determination by deputies that there was sufficient evidence to arrest Ross-Varner that she transported to the Wayne County Sheriff's Office Annex, where she was Mirandized and given the opportunity to make a statement. Accordingly, Ross-Varner's Motion to Suppress Second December 12, 2013 Statement [DE-146] is DENIED.

10

### D. Motion to Suppress January 8, 2014 Statement

Ross-Varner argues in her Motion to Suppress January 8, 2014 Statement that her statement to Special Agent Page of the North Carolina State Bureau of Investigation should be excluded from evidence at trial because Special Agent Page promised her that the statement would not be used against her. [DE-149] at 2. Ross-Varner also argues that her January 8, 2014 statement cannot be used against her at trial because the statement was involuntary. *Id.* Ross-Varner contends that as a matter of law and equity, the Government should be held to its promise not to use her statement against her. *Id.* at 4.

When "a question arises whether a confession is incompetent because not voluntary, the issue is controlled by that portion of the Fifth Amendment to the [C]onstitution of the United States commanding that no person 'shall be compelled in any criminal case to be a witness against himself.'" *Malloy v. Hogan*, 378 U.S. 1, 7 (1964) (quoting *Bram v. United States*, 168 U.S. 532, 542 (1897)). The presence of threats, violence, implied promises, improper influence, or other coercive police activity does not in and of itself render a confession involuntary. *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997). The proper determination is "whether the defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired.'" *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). When assessing whether a defendant's will has been overborne or his capacity for self-determination critically impaired, the court must consider "'the totality of the circumstances,' including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." *Id.* (quoting *United States v. Wertz*, 625 F.2d 1128, 1134 (4th Cir. 1980)).

11

Here, Special Agent Page met with Ross-Varner following Ross-Varner's request to meet with law enforcement, which led to the interview on January 6, 2014. According to the Government, no promises were made to Ross-Varner and she was specifically told that the agents could not get her out of trouble or out of jail. Ross-Varner was told multiple times that the agents could not make her any promises. The court concludes that even if Special Agent Page promised Ross-Varner that her statements could not be used against her, Ross-Varner's will was not overborne or her capacity for self-determination critically impaired. As the Government points out, Ross-Varner was no stranger to the court system, and the January 6, 2014 meeting was at her request. It was during the January 6, 2014 meeting that Ross-Varner agreed to meet with Special Agent Page. While meeting with Special Agent Page on January 8, 2014, Ross-Varner demanded to know how she would be benefitted by the conversation.

The court notes that Ross-Varner's reliance on *United States v. Carter*, 454 F.2d 426, 427-28 (4th Cir. 1972) and *United States v. McHan*, 101 F.3d 1027, 1034 (4th Cir. 1996) is misplaced. These cases are distinguishable from the instant case because *Carter* and *McHan* involve negotiations for immunity between the defendant and the Government, by way of the Assistant United States Attorney. This case, on the other hand, involves Ross-Varner's claim that when she made her statements she had the "understanding" that "she was cooperating with law enforcement as part of providing information to prosecute others." [DE-148] at 1.

In light of the foregoing, Ross-Varner's Motion to Suppress January 8, 2014 Statement [DE-148] is DENIED.

**E. Motion to Dismiss Count One for Failure to Plead an Offense**

In her Motion to Dismiss Count One for Failure to Plead an Offense, Ross-Varner argues

12

that Count One is defective for the following reasons: (1) it fails to state all of the elements of

the offense charged; and (2) it fails to particularize the allegation in the manner required by Rule

7 of the Federal Rules of Criminal Procedure to enable her to plead double jeopardy in a future

prosecution for the same offense. [DE-150] at 1. Ross-Varner specifically contends that the

indictment fails to state all of the elements of the offense charged in Count One because the

indictment fails to state that methamphetamine is a "controlled substance" or that the object of

the conspiracy was to distribute a "controlled substance." *Id.* at 2. Further, Ross-Varner

contends that Count One of indictment fails to particularize because it fails to allege anything

about the means by which Ross-Varner allegedly committed the offense. *Id.* at 3-4.

An indictment is "a plain, concise, and definite written statement of the essential facts

constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment must contain the

elements of the offense charged, fairly inform a defendant of the charges against him, and allow

the defendant to raise double jeopardy as a defense in a future prosecution for the same offense.

*United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009) (internal quotation marks and

citations omitted).

Count One of the indictment charges as follows:

Beginning in or about November of 2011, the exact date being unknown, and
continuing up to and including on or about the date of the indictment, in the Eastern
District of North Carolina, and elsewhere, SAMUEL WAYNE HILL, also known as
"Sam Hill," WILLIAM JOSEPH HILL, also known as "Jody Hill," WILLIAM
BRYAN HILL, also known as "Bryan Hill," TERRY MATTHEW HALL, also
known as "Matt Hall," MICHAEL EUGENE CUSTER, SAMANTHA LEIGH
ROSS-VARNER and DOLLY WADSWORTH EVANS, the defendants herein, did
knowingly and intentionally, combine, conspire, confederate, agree and have a tacit
understanding with each other and with others [sic] persons, known and unknown,
to knowingly and intentionally manufacture, distribute, dispense and possess with the
intent to distribute a mixture and substance containing a detectable amount of

13

methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1) and 846.

Quantity of Controlled Substance Involved in the Conspiracy

. . .

With respect to MICHAEL EUGENE CUSTER, SAMANTHA ROSS-VARNER and DOLLY WADSWORTH EVANS, the amount involved in the conspiracy attributable to each defendant as a result of his or her own conduct and the conduct of the other conspirators reasonably foreseeable to him or her is fifty (50) grams or more of a mixture or substance containing a detectable amount of methamphetamine.

[DE-1] at 2-3.

Ross-Varner's claim that the failure of the indictment to use the specific phrase "controlled substance" renders it insufficient must fail. The specific statute Ross-Varner is charged with violating, 21 U.S.C. § 841(a)(1), makes it unlawful for a person "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Methamphetamine is specifically referred to as one of the controlled substances whose manufacture, distribution or dispensing, or possession with intent to do such things, would violate the statute. *See* 21 U.S.C. § 841(b)(1)(B)(viii). In the definition section of Title 21, the term "controlled substance" is defined as "a drug or other substance or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). Methamphetamine is listed as a Schedule II controlled substance. 21 U.S.C. § 812.

Ross-Varner's claim that the Count One of the indictment is not specific enough also must fail. The conspiracy statute with which Ross-Varner is charged with violating, 21 U.S.C. § 846, does not explicitly contain an overt act element. Accordingly, the indictment need not

14

allege any specific overt acts. *United States v. Shabani*, 513 U.S. 10, 12-13 (1994); *United States v. Lane*, No. 2:14cr139, 2014 WL 7157623, at \*3 (E.D.Va. Dec. 12, 2014). Count One tracks the language of the statute and puts Ross-Varner on notice as to the conspiracy for which she is charged.

For all these reasons, Ross-Varner's Motion to Dismiss Count One for Failure to Plead an Offense [DE-150] is DENIED.

## F. Motion to Exclude Statements by Troy Dye

Ross-Varner argues in her Motion to Exclude Statements by Troy Dye that the Government should not be permitted to introduce at trial evidence concerning any statements from Dye because he is deceased. [DE-151] at 1. Ross-Varner contends that admitting statements from Dye without her being able to cross-examine him would violate her State and federal constitutional rights to confront and cross-examine the witnesses against her under the Sixth Amendment to the United States Constitution. *Id.* Additionally, Ross-Varner asserts that it would violate her rights to due process and equal protection of law under the Fifth and Fourteenth Amendments. *Id.* at 1-2.

The Government has represented that it intends to introduce Dye's statements not to establish that Ross-Varner committed the theft of the firearm, but rather to provide context for the jury to understand why the Wayne County Sheriff's Department was conducting the investigation that they did on or about December 12, 2013. [DE-172] at 21.

Ross-Varner's Motion to Exclude Statements by Troy Dye [DE-151] will be DENIED without prejudice at this time. Should Ross-Varner's case go to trial, this court may need to revisit the issue during the course of the trial.

15

**G. Motion for Copy of Recording of Detention Hearing for Michael Custer**

In Ross-Varner's Motion for Copy of Recording of Detention Hearing for Michael Custer, Ross-Varner argues that she is entitled to a copy of the recording of codefendant Custer's October 9, 2014 detention hearing. [DE-152] at 1. According to Ross-Varner, she believes that Custer may be called as a witness against her at trial, and she believes the detention hearing recording likely contains material that would be useful for impeachment. *Id.* at 1-2.

In its Response, the Government states that it has no objection to Ross-Varner receiving a copy of the recording of Custer's detention hearing, so long as the Government gets a copy as well. [DE-172] at 21. The court finds that Ross-Varner and the Government are entitled to a copy of the recording of Custer's October 9, 2014 detention hearing. Consequently, Ross-Varner's Motion for Copy of Recording of Detention Hearing for Michael Custer [DE-152] is ALLOWED.

**H. Motion for Impeachment Records**

Ross-Varner argues in her Motion for Impeachment Records that she is entitled to the following materials pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972): (1) copies of any plea agreement, substantial assistance motion, or other document concerning any payments or benefits received by any Government witness from the Government; and (2) a copy of any records within the Government's possession, control, or knowledge concerning any drug use or treatment, alcohol treatment, or mental health treatment for any of the Government's witnesses. [DE-153] at 1-2.

The Government represents to the court that it has provided all of its discoverable material to Ross-Varner that is available to it at this time, with the exception of the plea

16

agreements and criminal histories of potential witnesses. [DE-172] at 23. The Government

further represents that it knows of no *Giglio* material pertaining to law enforcement and has

provided all the information it has pertaining to drug use, drug treatment, alcohol treatment or

mental health treatment for Government witnesses. *Id.* The Government acknowledges its on-

going duty to disclose discoverable material pursuant to *Brady* and *Giglio*. *Id.* The Government

agrees to provide any plea agreements and criminal records of any witnesses on the Thursday

prior to trial, unless another time can be agreed upon by the parties. *Id.*

Because the Government has acknowledged its on-going duty to disclose discoverable

material under *Brady* and *Giglio* and has agreed to turn over the requested materials not presently

in Ross-Varner's possession, Ross-Varner's Motion for Impeachment Records [DE-153] is

DENIED as moot.

## I. Motion to Stipulate to Felony Conviction

In her Motion to Stipulate to Felony Conviction, Ross-Varner seeks to be allowed to

stipulate to her status as a convicted felon for purposes of trial on Count Eleven. [DE-154] at 1.

Ross-Varner requests entry of an order barring the Government from introducing the name or

nature of any prior felony conviction at trial. *Id.*

The Government notes no objection to Ross-Varner's request to stipulate to her prior

felony conviction. [DE-172] at 22. The Government notes that it will need to refer to the fact

that Ross-Varner has such a conviction during the course of the trial, but it agrees not to refer to

the nature of the conviction for the purposes of 18 U.S.C. § 922(g). *Id.* Because the Government

has raised no objection, Ross-Varner's Motion to Stipulate to Felony Conviction [DE-154] is

ALLOWED.

17

## J. Motion for Pretrial Notice of 404(b) Evidence

Ross-Varner argues in her Motion for Pretrial Notice of 404(b) Evidence that the Government should be directed to produce any evidence it intends to admit at trial under Federal Rule of Evidence 404(b). [DE-155] at 1.

Rule 404(b) requires that the prosecution, upon request by the defendant, "provide reasonable notice of the general nature of any [Rule 404(b)] evidence that the prosecutor intends to offer at trial." Fed. R. Evid. 404(b). The rule does not, however, entitle the defendant to the discovery of the 404(b) evidence itself. *See United States v. Graham*, 468 F. Supp. 2d 800, 802 (E.D.N.C. 2006) (explaining Rule 404(b) does not require the government to identify "the tangible evidence upon which [it] may rely to introduce the Rule 404(b) evidence").

The Government acknowledges its obligation to provide reasonable notice of its intent to offer 404(b) evidence during trial and agrees to abide by the requirements of Rule 404(b) to provide such notice. [DE-172] at 22. Ross-Varner's Motion for Pretrial Notice of 404(b) Evidence [DE-155] is ALLOWED in part, to the extent it seeks notice of the general nature of any Rule 404(b) evidence the Government intends to introduce at trial. It is DENIED to the extent that it seeks an order requiring the production of such evidence.

## K. Motion for Copy of Michael Custer's PSR

In her Motion for Copy of Michael Custer's PSR, Ross-Varner argues that Custer's Presentence Report should be reviewed *in camera* and released to her for use during her trial because it likely contains material and favorable evidence that can be used for cross-examining Custer. [DE-156] at 1, 3. Ross-Varner specifically contends that she requires the release of Custer's Presentence Report for cross-examination as to Custer's history of substance abuse,

18

mental health information, and charged and uncharged criminal conduct. *Id.* at 2.

The prosecution has a duty to produce evidence in its possession that is favorable to the accused. *Brady*, 373 U.S. at 87. Favorable evidence includes evidence impacting the credibility of government witnesses. *Giglio*, 405 U.S. at 154. When it cannot be agreed whether certain materials are subject to disclosure, the court can conduct an *in camera* inspection and determination. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 57-58 (1987). "[A] district court is under no duty to conduct an *in camera* examination of a requested [Presentence Report] unless the accused has first clearly specified the information in the report that he expects will reveal exculpatory or impeachment evidence. *United States v. Trevino*, 89 F.3d 187, 192 (4th Cir. 1996), Further, "an accused must plainly articulate how the information contained in the [Presentence Report] will be both material and favorable to his defense." *Id.* at 192-93.

Because Ross-Varner's motion is generally based upon speculation as to what she expects might be in Custer's Presentence Report, the court concludes that Ross-Varner has failed to plainly articulate how the information contained in Custer's Presentence Report will be both material and favorable to her defense. Moreover, the Government represents that through discovery it has already provided Ross-Varner with information regarding Custer's substance abuse issues relevant to the time frame surrounding Custer's prosecution in federal court and has also provided Custer's prior criminal history. [DE-172] at 27. As the Government notes, Ross-Varner's ability to cross-examine Custer about his drug history is not hindered by her failure to receive Custer's Presentence Report because she is aware of potential substance abuse issues and can inquire about those without receiving Custer's Presentence Report. Therefore, Ross-Varner's Motion for Copy of Michael Custer's PSR [DE-156] is DENIED.

19

## L. Motion for Coconspirator Statements and Jencks Material

In her Motion for Coconspirator Statements and Jencks Material, Ross-Varner seeks an order requiring production by the Government of all statements of non-testifying co-conspirators, indicted or unindicted, that the Government intends or may intend to introduce at trial against her pursuant to Federal Rule of Evidence 801(d)(2)(E). [DE-157] at 1. Ross-Varner notes that under the Jencks Act, 18 U.S.C. § 3500, the Government is generally not required to produce any statements in its possession until the direct examination of those witnesses has taken place, but Ross-Varner contends that she is seeking early disclosure in an effort to promote judicial economy and fairness to the defense. *Id.*

The Jencks Act provides that "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of . . . discovery . . . until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). The Jencks Act specifies further the scope of production by providing that

[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.

18 U.S.C. § 3500(b); *see also United States v. Lewis*, 35 F.3d 148, 151 (4th Cir. 1994) (explaining "[t]he district court may not require the government to produce Jencks Act material relating to one of its witnesses until *after* the witness has testified") (emphasis in original). The Jencks Act defines a "statement" of any witness testifying on behalf of the government to include a written statement "signed or otherwise adopted or approved" by the witness, a "recording" of a

20

witness' oral statement that is a "substantially verbatim recital," and statements made to a grand jury. 18 U.S.C. § 3500(e)(1)-(3).

The Government represents that it has turned over all approved statements available to it at this time and will continue to turn over statements of codefendants, co-conspirators and other potential witnesses as they become available to the Government. [DE-172] at 24. Consequently, Ross-Varner's Motion for Coconspirator Statements and Jencks Material [DE-157] is DENIED as moot.

## M. Motion to Sever Trial from Codefendants

In her Motion to Sever Trial from Codefendants, Ross-Varner argues that this court should sever the trial of her case from the trial of any co-defendants. [DE-158] at 1. Ross-Varner contends that severance is proper because of the risk that she could be convicted based upon evidence of the acts of others in which she did not participate and which were not reasonably foreseeable to her. *Id.* Further, Ross-Varner asserts that the evidence primarily shows that she was a drug addict and being tried with one or more alleged drug traffickers would result in unfair prejudice to her. *Id.*

Federal Rule of Criminal Procedure 8(b) permits multiple defendants to be charged in the same indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Defendants indicted together should be tried together, unless special circumstances exist. *United States v. Brugman*, 655 F.2d 540, 542 (4th Cir. 1981). The court may order separate trials if joinder of defendants in one trial appears to prejudice a defendant or the Government. Fed. R. Crim. P. 14(a). The burden rests with the moving party to show prejudice and severance should

21

be allowed "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

As noted, Ross-Varner argues that the evidence primarily shows she was merely an addict and she speculates that it would be prejudicial to her to be tried with codefendants that are alleged drug traffickers. The court concludes that Ross-Varner has not shown that she will be prejudiced by being tried in a joint trial. Moreover, as the Government points out, Ross-Varner can remedy any prejudice by requesting jury instructions directing the jury to consider each defendant and each count separately. [DE-172] at 30. Accordingly, Ross-Varner's Motion to Sever Trial from Codefendants [DE-158] is DENIED.

## N. Motion to Dismiss Gun Charges on 2nd Amendment Grounds

Ross-Varner argues in her Motion to Dismiss Gun Charges on 2nd Amendment Grounds that Counts Eleven, Twelve and Thirteen should be dismissed because these charges violate her Second Amendment right to own firearms. [DE-159] at 1. Ross-Varner contends that 18 U.S.C. § 922(g)(1) (Count Eleven), 18 U.S.C. § 922(j) (Count Twelve), and 18 U.S.C. § 924(c) (Count Thirteen) violate her constitutional right to bear arms under the Second Amendment to the United States Constitution. *Id.*

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court held that the core right of the Second Amendment is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. 570, 635 (2008). The Supreme Court noted as follows:

22

[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of firearms.

*Id.* at 626-27

In *United States v. Jackson*, 555 F.3d 635 (7th Cir. 2009), the defendant argued that his conviction under 18 U.S.C. § 924(c) was unconstitutional because he had a Second Amendment right to possess guns in his home for self-protection. The court noted that *Heller* held that the Constitution entitles citizens to keep and bear arms "for the purpose of *lawful* self-protection, not for *all* self-protection." *Id.* at 636. Further the court noted that " [t]he Constitution does not give anyone the right to be armed while committing a felony[.]" *Id.*

Consistent with the foregoing, and consistent with her concession that this issue is raised for preservation purposes, Ross-Varner's Motion to Dismiss Gun Charges on 2nd Amendment Grounds [DE-159] is DENIED.

## O. Motion for Discovery

In her Motion for Discovery, Ross-Varner moves for discovery and inspection of all evidence described by Federal Rule of Criminal Procedure 16, including but not limited to all exculpatory and impeachment evidence as required by the following cases: *Napue v. Illinois*, 360 U.S. 264 (1959); *Brady v. Maryland*, 373 U.S. 83 (1963); *Giles v. Maryland*, 386 U.S. 66 (1967); *Giglio v. United States*, 405 U.S. 150 (1972), and *Kyles v. Whitley*, 514 U.S. 419 (1995). [DE-160] at 1. Ross-Varner notes that this motion is a preservation motion, which is brought to assert and preserve her right to complete discovery materials from the Government. *Id.*

The Government acknowledges its *Brady* obligation and agrees to comply with it without

23

the need for an order from the court. [DE-172] at 32. Accordingly, Ross-Varner's Motion for Discovery [DE-160] is DENIED.

## III. Conclusion

In light of the foregoing, Ross-Varner's:

(1) Motion to Dismiss Count One for Absence of Supporting Evidence [DE-142] is DENIED;

(2) Motion to Suppress First December 12, 2013 Statement [DE-144] is DENIED;

(3) Motion to Suppress Second December 12, 2013 Statement [DE-146] is DENIED;

(4) Motion to Suppress January 8, 2014 Statement [DE-148] is DENIED;

(5) Motion to Dismiss Count One for Failure to Plead an Offense [DE-150] is DENIED;

(6) Motion to Exclude Statements by Troy Dye [DE-151] is DENIED without prejudice at this time, with the understanding that the issue may need to be revisited if this case proceeds to trial;

(7) Motion for Copy of Recording of Detention Hearing for Michael Custer [DE-152] is ALLOWED to the extent that Ross-Varner and the Government are entitled to a copy of the recording of Custer's October 9, 2014 detention hearing;

(8) Motion for Impeachment Records [DE-153] is DENIED as moot;

(9) Motion to Stipulate to Felony Conviction [DE-154] is ALLOWED;

(10) Motion for Pretrial Notice of 404(b) Evidence [DE-155] is ALLOWED in part and DENIED in part;

(11) Motion for Copy of Michael Custer's PSR [DE-156] is DENIED;

(12) Motion for Coconspirator Statements and Jencks Material [DE-157] is DENIED as

moot;

(13) Motion to Sever Trial from Co-defendants [DE-158] is DENIED;

(14) Motion to Dismiss Gun Charges on 2nd Amendment Grounds [DE-159] is DENIED;

(15) Motion for Discovery [DE-160] is DENIED.

SO ORDERED.

This, the __9__ day of April, 2015.

_James C. Fox_

JAMES C. FOX
Senior United States District Judge